**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PMTS LIQUIDATING CORP., *et al.*, | ) | Case No. 08-11551 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| NHB ASSIGNMENTS LLC, | ) | |
| LIQUIDATING TRUSTEE, ON BEHALF | ) | |
| OF THE LIQUIDATING TRUST | ) | |
| | ) | |
| Plaintiff. | ) | Adv. Pro. No. 10-56167 (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| GENERAL ATLANTIC LLC and | ) | |
| BRADEN KELLY, | ) | |
| | ) | |
| Defendants. | ) | Docket Reference No. 16 |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the motion (the "Motion") [Docket No. 16] filed by General Atlantic LLC ("GA") and Braden Kelly ("Kelly") (collectively, the "Defendants") to dismiss the complaint (the "Complaint") [Docket No. 1] filed by NHB Assignments LLC, the Liquidating Trustee in these post-confirmation Chapter 11 proceedings (the "Trustee"). The Trustee alleges that the Defendants breached their fiduciary duties to the predecessor entity to PMTS Liquidating Corp., ProxyMed, Inc. ("ProxyMed"). Additionally, the Trustee alleges that GA defrauded

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12. . .." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

1

ProxyMed.  For the following reasons, the Court will grant the Motion in part and deny the Motion in part.

## BACKGROUND

### I. General Background

ProxyMed, a Florida corporation, was an electronic healthcare transaction processing services company, which provided connectivity, cost-containment services, and related "value-added" products to physicians' offices, payers, medical laboratories, pharmacies, and other healthcare institutions.  For reasons discussed in greater detail below, ProxyMed was in a liquidity crisis in the summer of 2008 and filed a voluntary petition on July 23, 2008 (the "Petition Date").  In the months following the Petition Date, ProxyMed conducted a successful auction and sale under section 363 of the Bankruptcy Code.  ProxyMed filed and subsequently obtained confirmation of its plan of liquidation (the "Plan") on July 15, 2009.  Under the Plan, the Trustee assumed control over ProxyMed's remaining assets, including causes of action, and is responsible for pursuing causes of action, objecting to claims, making distributions, and otherwise implementing provisions of the Plan.

### II. The Relationship Between GA and ProxyMed

On March 27, 2002, GA, a private equity investment firm with a portfolio of health care processing services companies, entered into a Stock and Warrant Purchase Agreement (the "Purchase Agreement") with ProxyMed, under which it acquired 1,569,366 unregistered shares of ProxyMed common stock at $15.93 per share, for a total purchase price of approximately $25 million.  Additionally, GA obtained warrants to purchase an additional 549,279 shares of ProxyMed common stock at the same offering price, exercisable after April 5, 2003.

Pursuant to the Purchase Agreement, GA appointed Kelly, a managing member of GA, to the ProxyMed board of directors.  As of March 28, 2003, GA's shares, including the shares subject to the warrants and 6,250 shares issuable upon exercise of Kelly's stock options, represented 28.9 percent of the voting interests of ProxyMed.  On July 8, 2003, GA received an additional 243,882 warrants.

On December 5, 2003, ProxyMed entered into an agreement to acquire all of the outstanding capital stock of PlanVista Corporation ("PlanVista"), a company that provided medical cost containment and business process outsourcing solutions for the medical insurance and managed care industries, as well as services for healthcare providers, for 3,600,000 shares of ProxyMed common stock.  GA participated significantly in the financing for this acquisition.  On March 2, 2004, GA and certain other investors purchased an aggregate of 1,691,277 shares of unregistered ProxyMed common stock at $14.25 per share in a private placement that raised approximately $24.1 million.  ProxyMed used those funds to retire certain debts of PlanVista and to fund certain costs associated with its acquisition of PlanVista.

On March 25, 2004, GA exercised its original warrants under the Purchase Agreement to purchase 549,279 shares of common stock for $8.75 million.  As of April 12, 2004, GA owned 3,381,802 shares of ProxyMed common stock, representing 26.8 percent of ProxyMed's outstanding shares.

**III.  Kelly's Role in Governing ProxyMed**

While serving on the board of ProxyMed, Kelly had significant involvement in the governance of ProxyMed.  In the Spring of 2005, ProxyMed began searching for a new CEO, and the Trustee alleges that Kelly played a central role in that process.  Ultimately, John Lettko

("Lettko"), a candidate with over 20 years of CEO experience, was selected. Once in the job, Lettko consulted Kelly frequently on matters such as employee hiring decisions, employee compensation, trademark issues facing ProxyMed, investor relations presentations, and press releases. On February 14, 2006, ProxyMed acquired Zeneks, Inc. ("Zeneks"), a small bill negotiation services company. The Trustee alleges that Kelly rebuked Lettko for not obtaining Kelly's approval before making the decision to pursue the acquisition of Zeneks.

## IV. Kelly and Ford Allegedly Make Representations to Lettko that GA Would Continue to Invest in ProxyMed

In the course of his interview process and thereafter, Lettko repeatedly sought assurances from Kelly that GA would continue to provide additional capital as needed to support the success of ProxyMed. Specifically, the Trustee alleges that on March 15, 2005, May 5, 2005, and throughout several other meetings in May, Kelly represented to Lettko that GA would continue to provide financing to ProxyMed.

At the May 2006 board meeting, Lettko suggested that ProxyMed begin acquiring more preferred provider organization networks ("PPOs") in order to increase the proportion of direct contracts with providers. At the same May 2006 board meeting, the Trustee alleges that Kelly stated that GA would either "lead or follow the financing." On June 13, 2006, Lettko proposed two potential acquisitions of PPOs to the board. Lettko continued efforts to pursue one of those companies, PPONext, throughout June and July of 2006. Lettko enlisted Kelly assist with the financing arrangements for this acquisition. By September of 2006, ProxyMed was nearing closure on a letter of intent with PPONext, under the terms of which ProxyMed needed to obtain financing by October 20, 2006. On September 7, 2006, Drew Pearson ("Pearson"), a managing

director of GA, invited Lettko to New York to discuss the possibility of GA providing further financing to ProxyMed. Pearson also sent an email on that date to William Ford ("Ford"), the president of GA, and another principal of GA, stating that any further investment in ProxyMed was "a long shot" (the "Pearson Email"). On September 14, 2006, Kelly again represented to Lettko that while GA would probably not take the lead on arranging for financing of the PPONext acquisition, it was "likely interested in participating on a pro-rata basis."

**V. GA Invests in Emdeon and Declines to Invest Further in ProxyMed**

On February 16, 2006, Emdeon Corporation ("Emdeon"), a significant competitor to ProxyMed, announced that it had received inquiries regarding the acquisition of its Emdeon Business Services ("EBS") and Emdeon Practice Services segments. Subsequently, Lettko suggested to Kelly that GA consider proposing a merger of ProxyMed and EBS. Emdeon evidently declined the offer and GA thereafter began to pursue an investment in EBS on its own. The Trustee alleges that on August 1, 2006, Emdeon raised concerns as to GA's ownership stake in ProxyMed and also sought assurances from GA that GA's ownership stake in ProxyMed would not constitute an impediment to consummating a deal between GA and Emdeon. Specifically, the Trustee alleges that on August 6, 2006, Kelly met with Martin Wygod (the "Kelly/Wygod Meeting"), chairman of the board of Emdeon, to provide assurances to Emdeon. GA continued its pursuit of the EBS investment, conducting due diligence throughout August and September of 2006.

On September 13, 2006, Lettko met with GA to discuss the potential acquisition of PPONext. At this meeting, ProxyMed laid out its current financial condition and its investment strategy in the hope of obtaining financial backing from GA. On or about September 18, 2006,

Jonathon Korngold, the GA managing director overseeing the EBS deal, discussed the merits of the EBS investment with Kelly. A September 18, 2006 email from Korngold to another GA managing director indicated that Kelly thought that EBS represented a better opportunity than ProxyMed.

Emdeon announced GA's investment in EBS on September 26, 2006. The investment consisted of $325 million in cash and a $925 million loan. Later that same day Ford informed Lettko that GA would not provide further financing to ProxyMed.

## VI. ProxyMed's Bankruptcy and the Instant Case

After the financing negotiations failed with GA, ProxyMed continued to seek financing from other parties to complete the PPONext transaction, to no avail. Two years later, on July 23, 2008, ProxyMed filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. In April of 2010, the Trustee served a subpoena pursuant to Federal Rule of Bankruptcy Procedure 2004 upon each of the defendants seeking discovery to assist the Trustee in determining whether to commence an action against them. The Defendants ultimately produced approximately 500,000 pages of documents in response. On December 21, 2010, the Trustee filed the Complaint.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(O).

## STANDARD OF REVIEW

The Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Put another way, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, the Court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that the Supreme Court in Twombly "reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits"). In addition, all reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183. Legal conclusions, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1946 (2009).

Further, the Rule 12(b)(6) standards implicate the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, made applicable here by Federal Rule of Bankruptcy Procedure 7008. See Phillips, 515 F.3d at 234. Rule 8 mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A

complaint must provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

Specifically, "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief . . . [because] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 550 U.S. at 556 n.3).

The Third Circuit articulated the pleading standard created by Rule 8 and Rule 12(b)(6) as follows:

> [S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (citations omitted).

Moreover, by the Complaint the Trustee has alleged fraud, which must meet the elevated pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b), made applicable here by Federal Rule of Bankruptcy Procedure 7009, states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed.R.Civ.P. 9(b).

The Third Circuit has explained that the purpose of Rule 9(b)'s requirement that plaintiffs particularly plead the "circumstances" of the alleged fraud is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Machinery Corp. v.

Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir.1984), cert. denied 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985).

It is not a defendant's fraudulent intent that must be pled with particularity, but the circumstances constituting fraud. The Third Circuit has indicated that, "allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegation of fraud." Seville Indus., 742 F.2d at 791. This Court has additionally stated that "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee or a trust formed for the benefit of creditors . . . is asserting the fraudulent transfer claims." Official Comm. of Unsecured Creditors of Fedders North America, Inc. v. Goldman Sachs Credit Partners (Fedders I), 405 B.R. 524, 544 (Bankr.D.Del.2009). This is because a trustee "inevitabl[y] lack[s] knowledge concerning acts of fraud previously committed against the debtor, a third party." Id. (quoting Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture), 175 B.R. 560, 567-68 (Bankr.E.D.Pa.1994)). As outsiders to the transactions in question, the Trust may be put to some trouble to develop its case, but the pleading requirements under Rules 8, 9, and 12(b)(6) remain applicable.

The Court therefore, reviews all of Plaintiff's claims under Rule 12(b)(6) and Rule 8, and additionally applies Rule 9(b) scrutiny to Plaintiff's fraud claim.

## PARTIES' ARGUMENTS

### I. Trustee's Argument

The Trustee argues that the Complaint pleads sufficient facts to support claims for breaches of fiduciary duties against GA and Kelly ("Count I") and a claim for fraud against GA

("Count II"). Because the conduct giving rise to the alleged breach of fiduciary duty arose mainly in New York and because the Purchase Agreement contained a choice of law clause designating New York law as governing the contract between the parties, the Trustee asserts that New York law governs the breach of fiduciary duty claims against GA. The Trustee asserts two grounds upon which to base its breach of fiduciary duty claim against GA under New York law. First, the Trustee posits that GA occupied a "position of trust and confidence" with ProxyMed. Second, the Trustee asserts that GA exercised control and influence over ProxyMed.

As to Kelly, the Trustee asserts that the Complaint states a breach of fiduciary duty claim based on the circumstances surrounding GA's investment in EBS. Specifically, the Trustee alleges that Kelly concealed his conflict of interest resulting from GA's pursuit of an investment in EBS, misrepresented GA's interest in making an additional investment in ProxyMed, and failed to inform ProxyMed that it should not rely on GA to provide any additional financing, all in violation of his duties of loyalty and candor.

The Trustee argues that New York has the most significant relationship to GA's alleged fraudulent conduct because the statements and acts constituting the alleged fraud occurred in New York. Moreover, the Trustee asserts that the Complaint has alleged specific instances of fraudulent conduct as required by the Federal Rules sufficient to support a claim for fraud. Namely, the Trustee posits that the Complaint identifies specific false and misleading statements that GA made to ProxyMed and also identifies when and where those statements were made.

## II. GA and Kelly's Argument

Both GA and Kelly assert that the Complaint fails to plead sufficient facts to state any claim upon which relief can be granted. GA and Kelly also posit that Florida law, not New York

law, governs the fiduciary duty claims as the state of incorporation, and also note that Florida looks to Delaware on issues of corporate law.

GA argues that because it owned a minority interest in ProxyMed (between 26 percent and 29 percent at all relevant times), it owed no fiduciary duty to ProxyMed. GA further posits that it did not exercise dominion or control over ProxyMed so as to fit within a narrow exception that creates a fiduciary duty for such a minority shareholder. Rather, the argument continues, the majority of the facts that ProxyMed asserts are examples of Kelly's individual conduct in his official capacity as a ProxyMed director and the Complaint fails to allege that GA controlled or directed Kelly's actions as such.

Additionally, Kelly argues that the breach of fiduciary duty claim the Trustee has asserted against him fails. Kelly asserts that the Complaint does not allege facts establishing a breach of his duties of loyalty or candor to ProxyMed.

Finally, GA asserts that Delaware law governs ProxyMed's fraud claim. Because the statements that the Trustee relies upon in alleging fraud all relate to conditional expressions of opinion or prediction as to whether GA would provide financing in the future to ProxyMed, neither of which are actionable under Delaware law, GA argues that the Trustee's fraud claim fails.

## DISCUSSION

### I. The Trustee's Claims for Breach of Fiduciary Duty

#### A. Choice of Law as to Breach of Fiduciary Duty Claim

It is well settled that a federal court applies the choice of law principles of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020,

11

1021, 85 L.Ed. 1477 (1941); LaSala v. Bordier et Cie, 519 F.3d 121, 140 (3d Cir. 2008). Delaware's choice of law principles designate the internal affairs doctrine as the mechanism by which to determine which state's laws apply to the Trustee's breach of fiduciary duty claims. Under the internal affairs doctrine, one state alone has authority to regulate matters peculiar to relationships among or between the corporation and its current officers, directors, and shareholders. Edgar v. MITE Corp., 457 U.S. 624, 645 (1982). The state under which the corporation is chartered has this authority. Id. Here, ProxyMed is incorporated in Florida.

Even though Florida law governs this claim, Delaware law remains relevant because Florida courts routinely look to Delaware corporate law to establish their own corporate doctrines. In re World Health Alternatives, Inc., 385 B.R. 576, 590 (Bankr. D. Del. 2008); Boettcher v. IMC Mortgage Co., 871 So.2d 1047, 1052 (Fla. Dist. Ct. App. 2004); Connolly v. Agostino's Ristorante, Inc., 775 So.2d 387, 388 n. 1 (Fla. Dist. Ct. App. 2000) (citing Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1459 n. 22 (11th Cir.1989)).

### B. GA's Alleged Breach of Fiduciary Duty

Florida has recognized a cause of action against majority shareholders who "utilize their control of the corporation to their advantage as against the minority stockholders." Tillis v. United Parts, Inc., 395 So.2d 618, 619 (Fla.Dist.Ct.App.1981). Under Delaware law, a shareholder owes a fiduciary duty if it owns a majority interest in or exercises control over the business affairs of the corporation. Ivanhoe Partners v. Newmont Mining Corp., 535 A.2d 1334, 1344 (Del. 1987). Therefore, under both Florida and Delaware law, a majority shareholder unquestionably owes a fiduciary duty to the corporation.

A fiduciary duty may arise for a minority shareholder under certain circumstances:

> [A] shareholder who owns less than 50% of a corporation's outstanding stocks does not, without more, become a controlling shareholder of that corporation, with a concomitant fiduciary status. For a dominating relationship to exist in the absence of controlling stock ownership, a plaintiff must allege domination by a minority shareholder through <u>actual control</u> of corporation conduct.

<u>Citron v. Fairchild Instrument Corp.</u>, 569 A.2d 53, 70 (Del. 1989) (emphasis added). GA held between a 26 percent and a 29 percent ownership stake in ProxyMed at all relevant times, making GA a minority shareholder. Therefore, the issue before the Court is whether GA exercised the requisite amount of "actual control" to bring it within this limited exception.[2]

A showing of "actual control" requires a demonstration of more than actions a director would characteristically take in his role as a governing member of the corporation. For example, "actual control" by a 43.3 percent minority shareholder was found where (1) the minority shareholder opposed renewal of management contracts and obtained a vote consistent with its preference, (2) the minority shareholder vetoed the corporation's acquisition of another target company, and (3) the other directors deferred to the minority shareholder because of its position as a significant stockholder. <u>Kahn v. Lynch Commc'n Sys., Inc.</u>, 638 A.2d 1110, 1114 (Del. 1994).

The Trustee primarily alleges that GA exercised control over ProxyMed through its agent, Kelly. However, the record reflects nothing extraordinary about the actions that Kelly took in his capacity as a member of ProxyMed's board of directors that would demonstrate control or

---

[2] The Trustee asserts the fact that GA occupied a "position of trust and confidence" with ProxyMed as an additional ground for breach of GA's alleged fiduciary duty. In support of this argument, the Trustee relies primarily on a New York Court of Appeals case. See <u>EBC I, Inc. v. Goldman Sachs & Co.</u>, 832 N.E.2d 26, 31-33 (N.Y. 2005). However, no Florida or Delaware court has recognized the proposition that a minority shareholder may incur fiduciary duties simply by holding a "position of trust and confidence," and where such a shareholder does not exercise domination and control over the affairs of the corporation.

domination of the board.  The record reflects Kelly's involvement in employee hiring decisions, employee compensation decisions, commenting on proposed acquisitions or other strategic opportunities of ProxyMed, evaluating trademark issues facing ProxyMed, overseeing investor relations presentations, and assisting with press releases.  The record further reflects that there were at least four non-GA affiliated board members, and at least one other substantial shareholder with a seat on ProxyMed's board.

Taking all facts in the Complaint as true and drawing all reasonable inferences in favor of the Trustee, the Court holds that Plaintiff has failed to state a claim for breach of fiduciary duty against GA, as the Complaint fails to allege facts supporting the contention that GA exercised "actual control" over ProxyMed.  Therefore, the Motion will be granted with respect to GA's breach of fiduciary duty in Count I of the Complaint.

### C.  Kelly's Alleged Breach of His Fiduciary Duty of Loyalty

"Florida law has long recognized that corporate officers and directors owe duties of loyalty and a duty of care to the corporation."  Welt v. Jacobson (In re Aqua Clear Tech., Inc.), 361 B.R. 567, 575 (Bankr.S.D.Fla.2007); Cohen v. Hattaway, 595 So.2d 105, 107 (Fla.Dist.Ct.App.1992) ("[c]orporate directors and officers owe a fiduciary obligation to the corporation and its shareholders and must act in good faith and in the best interest of the corporation." (quoting Tillis v. United Parts, Inc., 395 So.2d 618 (Fla.Dist.Ct.App.1981)).  Similar to Florida, Delaware courts have traditionally and consistently held that officers and directors owe fiduciary duties of care, loyalty, and good faith to a corporation and its

shareholders. Malone v. Brincat, 722 A.2d 5, 9 (Del. 1998). Therefore, under both Florida and Delaware law, officers and directors owe fiduciary duties to the corporation and its shareholders.[3]

Although directors or officers may inherently possess a degree of self-interest in certain situations, the duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholder, not shared by the stockholders generally." Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993). The duty of loyalty is "not limited to cases involving a financial or other cognizable fiduciary conflict of interest. It also encompasses cases where the fiduciary fails to act in good faith." Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006). The duty of good faith, therefore, is embedded within the duty of loyalty and does not constitute a freestanding duty. Id.

By way of example, the Delaware Supreme Court has stated that an officer or director may breach the duty of good faith by if he "intentionally acts with a purpose other than that of

---

[3]The Court notes that the Trustee contended at argument that Kelly also breached a duty to disclose to ProxyMed's board details of GA's negotiations with Emdeon. Delaware court have established that a certain duty to disclose "inheres in the duty of loyalty." Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC, 922 A.2d 1169 (Del. Ch. 2006). However, the duty to disclose does not include disclosing everything the director knows about transactions in which the corporation is involved. Id at 1184. "Rather, the director disclosure cases have implicated circumstances in which the director is personally engaged in transactions harmful to the corporation, but beneficial to the director." Id. (emphasis added). Director disclosure cases are thus typically characterized at least in part by an element of self-dealing on the part of the director.
   In asserting the breach of fiduciary duty claim against Kelly, the Trustee relies primarily on the notion that Kelly breached his duty of loyalty by (1) failing to disclose the alleged conflict of interest inherent in his position as a director of ProxyMed resulting from GA's potential investment in EBS, (2) stating that GA would likely finance part of the PPONext transaction, and (3) failing to inform ProxyMed that it should not rely on GA for further financing. Under these factual allegations, the Trustee has not articulated a claim for a breach of the duty of loyalty for failure to disclose because the Trustee has not alleged any substantive self-dealing by Kelly. While Kelly may have indirectly stood to gain from the success of GA as an executive of GA, his involvement in the EBS investment was not a personal venture, nor can his failure to disclose the EBS investment, standing alone, suffice to establish self-dealing in this context.

advancing the best interests of the corporation, . . . acts with the intent to violate applicable positive law, or . . . intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." In re Walt Disney Co. Derivative Litigation, 906 A.2d 27, 67 (Del. 2006).

Here, the Complaint alleges with respect to the Kelly/Wygod Meeting that Kelly violated his duty of good faith, as embedded in the fiduciary duty of loyalty. The Trustee alleges that Kelly met with ProxyMed's largest competitor to assure it that GA's investment in ProxyMed would not interfere with GA's investment in EBS. The Trustee contends that this meeting was intended to allay Emdeon's concerns about ProxyMed and reflects an intention by Kelly to limit or impede ProxyMed's response to a GA / EBS transaction. Drawing all reasonable inferences in favor of the Plaintiff, the Complaint alleges facts relating to an alleged breach of the duty of loyalty by Kelly sufficient to survive a motion to dismiss. Therefore, the Motion will be denied with respect to Kelly's alleged breach of fiduciary duty in Count I of the Complaint.

## II. The Trustee's Claim for Fraud Against GA

### A. Choice of Law as to Fraud Claim

The parties disagree on which state's law applies to the fraud claim. The Trustee contends that applying New York law, his claim for fraud survives. GA and Kelly assert that applying Delaware law, the Trustee's claim for fraud fails. However, analyzing the Trustee's fraud claim under either state's law produces the same result.

As noted above, it is well settled that a federal court applies the choice of law principles of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); LaSala v. Bordier et Cie, 519 F.3d 121, 140 (3d Cir.

2008). Delaware's choice of law approach entails a two-pronged inquiry. First, it is necessary to compare the laws of the competing jurisdictions to determine whether the laws actually conflict on a relevant point. See Pennsylvania Employee, Benefit Trust Fund v. Zeneca, Inc., 710 F.Supp.2d 458, 466 (D.Del. 2010). While no reported Delaware cases establish that an actual conflict must exist, the Third Circuit, as well as other federal courts within Delaware, have concluded that Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of laws analysis. Id; see also In re Teleglobe Commc'ns Corp., 493 F.3d 345, 358 (3d Cir.2007). Because the Trustee's fraud claim fails applying either state's law, the distinctions between New York and Delaware law essentially represent a false conflict. Nevertheless, the Court will analyze each state's law for the sake of completeness.

Under Delaware law, fraud consists of:

> 1) a false representation, usually one of fact, made by the defendant;
> 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
> 3) an intent to induce the plaintiff to act or to refrain from acting;
> 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
> 5) damage to the plaintiff as a result of such reliance.

Stephenson v. Capano Development, Inc., 462 A.2d 1069, 1074 (Del. 1983). Under New York law, the elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages. Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559 (N.Y. 2009).

The Trustee bases his fraud claim against GA on the detrimental reliance that ProxyMed placed on alleged misrepresentations that agents of GA made regarding providing additional financing. In sum, the Trustee argues that GA intentionally and affirmatively misled ProxyMed

17

of its intention to provide additional financing and that, had ProxyMed known of GA's plan to invest in EBS, it would have asked Kelly to step down from ProxyMed's board and would have pursued other sources of financing more seriously in advance of the EBS announcement. While Delaware and New York each define fraud similarly, the analysis surrounding whether a statement of opinion may constitute fraud differs slightly in each state. However, as noted above, applying either state's law produces the same result and therefore, the Trustee's claim for fraud fails.

Under Delaware law, "if a speaker intended when she made a promise to perform it, but sometime later reneg[ed], no action for fraud arises." Stevanov v. O'Connor, 2009 WL 1059640, 12 (Del. Ch. 2009); Consol. Fisheries Co. v. Consol. Solubles Co., 112 A.2d 30, 37 (Del. 1955) ("It is the general rule that mere expressions of opinion as to probable future events, when clearly made as such, cannot be deemed fraud. . . .").

New York law does permit an action for fraud based on statements of opinion where a confidential relationship exists. Hutchins v. Utica Mut. Ins. Co., 107 A.D.2d 871, 872 (N.Y. App. Div. 1985); Matter of Levy, 19 A.D.2d 413, 417 (N.Y. App. Div. 1963). "To establish a basis of liability [for fraud based on statements of opinion], it must be shown that the person making the representation had, or held himself out as having, superior knowledge and recognized that the other person confided in him for guidance." Hutchins, 107 A.2d at 872. Because no special relationship of trust or confidence existed here between GA and ProxyMed, expressions of opinion related to GA's provision of financing cannot support a cause of action under this definition of fraud.

Additionally, under New York law, while specific affirmations are actionable under some circumstances, predictions generally are not:

> [A] positive expression of a present intent to perform an act in the future may be actionable if actually made with a preconceived and undisclosed intention of not performing it. Put another way, a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur must be distinguished from prophecy and prediction of something which it is merely hoped or expected will occur in the future. Statements in the former category may be actionable; those in the latter category cannot be.

Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp., 51 A.D.2d 140, 144-145 (N.Y. App. Div. 1976) (citations omitted). Statements of prediction are too uncertain to sustain a cause of action for fraud:

> A representation with respect to an unreckonable future phenomenon in circumstances that could neither be foreseen with certainty nor controlled with precision is too heavily freighted with prophecy, speculation and chance to support a cause of action for fraud.

Dooner v. Keefe, Bruyette & Woods, Inc., 157 F.Supp.2d 265, 278 (S.D.N.Y. 2001), citing Burgundy Basin Inn, Ltd., 51 A.D.2d 140 (citations omitted). For example, characterizations by a CEO to an employer that an IPO was "a sure thing," "a done deal,"and that she would retire "a wealthy woman" did not suffice to establish fraud. Dooner, 157 F.Supp.2d at 278.

Similarly, the allegations made here by the Trustee that Kelly indicated that GA "was likely to" or "interested in" providing further financing to ProxyMed, that GA was "likely interested in participating on a pro-rata basis," or that the September 7, 2006 invitation from Pearson to Lettko and the accompanying Pearson Email do not establish fraud.[4] Rather, these

---

[4] The Court also notes that there were sophisticated parties on each side of the GA/ProxyMed relationship, readily capable of documenting an enforceable commitment to lend. That documentation did not occur here.

statements all constitute predictions of future actions that could not have been "foreseen with certainty nor controlled with precision." Further, there is no credible or plausible allegation in the Complaint that the speakers knew the statements to be false when made. Therefore the allegations made by the Trustee do not suffice, as statements of prediction, to establish fraud under the stringent requirements of Rule 9(b), applying either Delaware or New York law. Count II of the Complaint will be dismissed.

## CONCLUSION

For the reasons outlined above, the Court will grant the Motion as to Count I against GA, deny the Motion as to Count I against Kelly, and grant the Motion as to Count II. An appropriate Order follows.

BY THE COURT:

_____
Dated: Wilmington, Delaware        Brendan Linehan Shannon
      July 1, 2011                         United States Bankruptcy Judge